60 N.J. Super. 104 (1960)
158 A.2d 411
LUKE MELCHIONNE, ET ALS., APPELLANTS,
v.
CITY OF NEWARK, ETC., ET AL., RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 23, 1959.
Decided February 29, 1960.
*106 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Benjamin H. Chodash argued the cause for appellants (Messrs. Krieger and Chodash and Mr. Leon S. Wolk, attorneys).
Mr. William L. Boyan, Deputy Attorney General, argued the cause for respondent Department of Civil Service (Mr. David D. Furman, Attorney General, attorney).
*107 Mr. Thomas M. Kane argued the cause for respondent City of Newark (Mr. Vincent P. Torppey, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiffs, nine employees of the City of Newark, appeal from a determination of the Civil Service Commission affirming the validity of the city's action in summarily "downgrading" them from their positions as "foreman parks and trees" in the Department of Public Works, allocated in the competitive division of the classified civil service, to positions as "laborer-driver" in the same department at a lower salary, these being in the labor division of the service. The city's justification for this action was that an earlier transfer of these plaintiffs out of the labor division, in which they unquestionably had permanent status, into the competitive division, was contrary both to those provisions of the Civil Service Act applying to local government, R.S. 11:19-1 et seq., as amended, and to the rules adopted by the Civil Service Commission in implementation of the act. Hence it was impossible for plaintiffs to have acquired permanent status as park and tree foremen; and since their status in those positions was consequently only temporary, they acquired no tenure rights, and the city was at liberty summarily to return them to their permanent positions in the labor division. The Commission agreed with this viewpoint.
It is clear that if these plaintiffs never acquired permanent status during their five years of occupancy of the park foreman positions, their summary removal therefrom was within the city's administrative judgment and discretion. See Barringer v. Miele, 6 N.J. 139 (1951); Bertone v. Sullivan, 12 N.J. Super. 330 (App. Div. 1951); Adams v. Atlantic City, 26 N.J. Misc. 259, 262-263 (Sup. Ct. 1948); Shalvoy v. Johnson, 84 N.J.L. 547 (Sup. Ct. 1913). See also Civil Service Rule 47, implementing R.S. 11:22-14 and 15. If, however, they did secure permanent status in the competitive division of the service they were entitled to *108 retain the foreman positions unless removed therefrom for bona fide reasons of economy. This is conceded both by the city and the Commission.
Determination of the status of these plaintiffs at the time of the removal here complained of requires detailed review of a series of municipal and commission administrative actions which are attended by some confusion on the record before us. All nine plaintiffs were originally employed by the city during the 1920's as park maintenance laborers in the then Department of Parks and Public Property. These employments, which were designated as permanent, were in the labor division of the classified civil service for which no competitive examination is necessary. N.J.S.A. 11:22-4; R.S. 11:22-48. None of these jobs had ever been designated "laborer-driver," to which position the city now attempts to "return" them. They continued to hold these jobs until 1948, when the city, by ordinance, created the positions of foreman-laborer in the shade tree bureau of the department of parks and public works, to which positions in the competitive division all nine plaintiffs were duly appointed at salaries ranging from $2,780 to $3,300, representing annual increases for these people ranging between $310 and $540. These appointments were held by the Civil Service Commission to have been invalid, and plaintiffs do not dispute this finding.
In 1950 the city hired Dr. Charles Messick as a consultant for the purpose of preparing a complete reclassification plan of all the municipal employees. The present status of that plan is indeterminate; it apparently has not yet been finally adopted and approved in its entirety; the administrative staff of the civil service department was still working on it at the time the hearings here under appeal were concluded. Nevertheless, portions of it have from time to time since 1951 been acted upon by both the municipality and the department.
In January 1951 each of the plaintiffs received a notice from the Newark Committee on Position Classification and *109 Salary Standards informing him that according to the recommendation of Dr. Messick it was proposed that his title be changed from "Foreman-Laborer" to "Park and Tree Foreman" and his salary be increased to a range of $3,480 to $4,020, these proposals "subject to the rules and regulations of the Civil Service Department and the statutes." The notice gave no indication of any proposed change of duties from those performed under the foreman-laborer job title, those having been specified in the 1948 ordinance referred to. (There is some confusion regarding duties. Those of foreman-laborer were the same as for park and tree foreman, but different from the laborer-driver duties. But these men had not been laborer-drivers  while in the labor division they had all done parks and trees maintenance work exclusively  work of the type presently included within the parks and trees foreman duties.)
Another ordinance was adopted by the city in 1952 creating permanent positions in various divisions of the department of parks and public works, including the shade tree bureau. One of the positions so created was that of "Foreman, Parks and Trees" with an annual salary range conforming closely to that set out in the 1951 notice to plaintiffs ($3,500-$4,000). By amendment of the ordinance in October 1953 the maximum salary was increased to $4,500, and by resolution passed shortly thereafter the nine plaintiffs were all appointed to that position. On November 17, 1953 the Civil Service Commission voted to approve the ordinance and resolution, effectuating its approval of the positions thereby reclassified and the transfers made thereto, and also to approve a statement of administrative procedures and policies governing the city's reclassification program. This statement included a provision that:
"* * * Incumbents in positions with permanent status in the non-competitive or labor division as of ____ and who were allocated to other positions now in the competitive division will be subject to further investigation and review and if found satisfactory will:
*110 1. Be permitted to retain their new title.
2. Receive compensation within the range established for their new title.
3. Not be entitled to promotional rights for future vacancies for positions in the competitive division and are entitled only to rights as earned in their respective positions as of ____ in accordance with Civil Service laws, rules and regulations.
In the event that the position held by the present incumbent becomes vacant in the future it shall be filled through regular examination procedures.
If, after further investigations and review, the incumbent is found unsatisfactory, he will be returned to the same or comparable title which he held immediately prior to the reclassification * * *."
In January 1954 each of the plaintiffs was informed by a letter signed by the president of the Civil Service Commission that, as of October 14, 1953, his new title was that of "Foreman, Parks and Trees," which position he would be entitled to keep without examination even though the Commission had ruled that the title was in the competitive division, but that he would have no right to take "promotional examinations for higher positions in the competitive division" without first taking an "open competitive examination to get status in the competitive division and be eligible for future promotion examinations." At the bottom of these letters appeared the code symbol "RAR," defined by a 1949 Civil Service Interdepartmental Memorandum as designating
"* * * the permanent status of one who had permanent status in his position in the Non-Competitive Division or in the Labor Division which position has been placed by the Civil Service Commission in the Competitive Division. Employees with such symbolized status are not entitled to promotional rights in the Competitive Division."
In the letter sent to one of the plaintiffs it was stated that examination was not necessary in order to maintain the new title because this was a "lateral transfer." One of the plaintiffs received, in response to his specific inquiry, a letter of similar tenor in March 1954 from Commission President Kelly.
*111 At a meeting in November 1954 the Commission voted to rescind its action taken in November 1953 with respect to the Newark reclassification program. Neither the reason for the rescission nor its extent is entirely clear. Under consideration at that meeting was a staff memorandum making two recommendations: the approval of the reclassification of various positions listed on an attached schedule (which did not include plaintiffs' positions) and a rescission of the November 1953 actions in order to "permit the actions to be handled administratively by the staff." The minutes of that meeting recite the following:
"The administrative actions of November 17, 1953 included a memorandum of that date which was then known as Exhibit 3, and is referred to in the minutes of the Commission meeting of November 17, 1953. President Kelly explained the circumstances surrounding the recommendation, stating that a conference had been held with Mayor Carlin of Newark, and he is in agreement."
The apparent reason for the rescission was the objection by city employees to the wholesale adoption by the Commission of the Messick reclassification; but note that reclassifications of other positions were approved at the same time the previous action was rescinded. It is evident, however, that the rescission was not motivated by an intention to displace plaintiffs from their positions. As late as January 1956 the city was still reassuring them that they were to continue in and had a right to these positions. It is not clear, however, whether or not the rescission extended to the previous approval of the reclassified positions or only to the approval of the "procedure" statement. The significance of this lies in the fact that reclassification was required first to have been approved by the Civil Service Commission in order to afford a basis for a valid holding of the reclassified position. See R.S. 11:24-1; Civil Service Rules 14, 15-2. More on this infra.
Despite this commission action plaintiffs continued in the position of park and tree foreman, receiving the salary stipulated for that position, and were carried on the various city *112 personnel and payroll records as permanent employees holding that position in an RAR status. In January 1956 each of the plaintiffs received another notice from Mr. Finkelstein, the city personnel officer. This recited that as a result of further study the department of civil service was recommending that "if further investigation and review is satisfactory" these men would have permanent status as park and tree foremen without promotional rights. It is to be noted that this was the first indication, except for the rescinded procedures statement, that the status of the plaintiffs was at all conditional. This intimation of a condition troubled one of the plaintiffs, and he wrote requesting clarification from the Commission. The reassuring response he received from Mr. Merrigan, executive assistant of the Commission, in February 1956, read in part as follows:
"As a result of a most recent classification, the Messick Survey, you were classified as a Foreman Parks and Trees. The title of Foreman Parks and Trees is in the Competitive Division of the Classified Service. Normally an open competitive examination would have been necessary. However, the Civil Service Department permitted you to retain the title of Foreman Parks and Trees, and the salary attached thereto, without examination. There is a condition imposed upon this classification and that is you are not eligible for promotion examinations to titles higher than that of Foreman Parks and Trees."
The letter contained no reference to "further investigation and review."
The question arises as to whether the "further investigation and review" referred to in the Finkelstein letter meant study and investigation of the several incumbents' qualifications to hold the reclassified position or the wisdom of the reclassification itself. If the latter, there is nothing in the record to indicate that the position reclassification was ever rejected, all the implications being to the contrary. All the later actions taken both by the city and the Commission with respect to the position are understandable only on the assumption that such a valid and approved reclassified position subsisted. Thus, even if the 1954 rescission extended *113 to the earlier express approval of the reclassified position, nevertheless, since it did not by its own terms constitute a final rejection of the reclassification, but only a referral of the decision thereon to the administrative staff, there was nothing to preclude a later administrative approval of the position, and all the indications are that such approval was given, at least implicitly. The Merrigan letter may thus be taken as confirmatory of the fact that the reclassified position validly existed. (If the term "investigation and review" meant a study of individual qualifications, that, too, was subsequently done, and to plaintiffs' advantage. See infra.)
One month after the February 1956 Merrigan letter the city decided that it had too many sanitary foremen in the department of public works. As a result of a conference between city and state civil service officials it was suggested that the way to relieve that situation would be to return the plaintiffs to their former positions and to assign nine of the excess sanitarians in their places as park and tree foremen. This was deemed feasible on the assumed basis that plaintiffs had not been validly appointed to these positions. (Note, no point was made as to the validity of the creation of the reclassified positions in the first place.) Pursuant to this scheme the city in May 1956 sent a formal request to the Civil Service Commission for permission to return the plaintiffs to their former laborer titles. The personnel history records which apparently accompanied the request bear the notations, for each, that the plaintiffs were reclassified in 1953 with RAR status, were included in an organizational transfer in 1954, which did not affect their status in any way, and were all given a salary raise as foreman, parks and trees, in January 1956.
In June 1956, after the foregoing request had been made by the city but before action thereon had been taken by the Commission, plaintiffs complained to the Commission, and a hearing was commenced on June 7 to review the propriety of the proposed action. The Commission's decision, rendered the following October, was that as of that *114 date plaintiffs held only temporary status in the park and tree foreman positions. It reasoned:
"* * * The appellants entered into service of the City of Newark without any examination * * * to permit them to be transferred without examination into the competitive class requires sound administrative reason, which depends upon future investigation by the administrative complement of the Department of Civil Service. Rule 53:2(a) of the Rules of the Civil Service Department provides that transfers shall not be made `from a position in the non-competitive or labor class or division to a position in any other class or division of the classified service.' Of course this rule must be read in conjunction with other statutory provisions and rules which would permit a transfer where a complete reclassification of positions are adopted in a particular municipality. But we do not have before us, at the present time, a final and complete action of reclassification."
It would appear, then, that the commission determination rested upon two independent grounds: (1) if there were a complete reclassification, the transfer from the labor to competitive division without examination would have been proper, but there was no complete reclassification; and (2) even without a complete reclassification, the transfer from the labor to the competitive division would have been proper had there been an examination, but there was no examination. The consequent order by the Commission directed the Chief Examiner and Secretary to
"direct the administrative staff presently studying the reclassification program of the City of Newark to take appropriate action to the end that the matter of whether appellants are qualified to hold permanent status in the competitive division under their present titles be determined. Any future action on the part of the appellants regarding their status will depend upon the action of the administrative staff * * *." (Emphasis added)
(Note, again, the assumption that the positions were in existence.)
The foregoing order plainly reflects the Commission's approach that plaintiffs' status could not be made permanent on the "complete reclassification" ground, but only by subsequent examination.
*115 Pursuant to the October 1956 order, the administrative staff was instructed the following month to conduct qualifying examinations of the plaintiffs. On November 29, 1956 Mr. Merrigan informed the city that the department would take no action on the city's request to retransfer plaintiffs until the qualifying examinations had taken place. These examinations were conducted, in interview style, on December 13, 1956. Two weeks later the department was informed by the Chief Examiner that all the plaintiffs were qualified to perform the duties of park and tree foremen (duties, it is to be reiterated, which they had in fact been performing prior to the reclassification). The city, however, took the position that it was not bound to accept the examination results, since, as the appointing authority, it was free to reject the Commission's certification. Consequently, in May 1957 the city requested the Commission to process the retransfer papers, and the Commission complied. The plaintiffs immediately complained to the Commission and, after various procedural steps, a rehearing was held March 20, 1958. (Between the time of the Commission's final approval of the retransfers and the rehearing the department had in fact held a competitive examination for the title in question, again indicating an assumption of its valid existence.) The rehearing culminated in a decision and order, dated November 26, 1958, incorporating the factual findings resultant from the previous hearing, reaffirming the temporary status of plaintiffs up to that time, agreeing with the city that it was not bound to retain the plaintiffs in the reclassified positions even after their qualifying examinations, and affirming the department's approval of their transfer back into the labor division.

I.
The first question to be determined is whether plaintiffs acquired permanency in the park and tree foreman positions prior to their qualification therefor by the department. *116 While at first blush the pertinent statutory provisions and departmental rules would seem to indicate not, fuller study yields a contrary conclusion.
R.S. 11:22-1 provides for a classified and unclassified civil service in the local and school government agencies. R.S. 11:22-4, as amended, provides for three classes within the classified service: competitive, labor and non-competitive. R.S. 11:22-8 provides that:
"* * * No transfer shall be made from an office or position in one class to that of another class nor to an office or position for original entrance to which there is required by this subtitle, or the rules adopted pursuant thereto, an examination involving essential tests or qualifications different from or higher than those required for original entrance to an office or position held by such person."
Department Rule 53-2(a) further provides that transfers shall not be made "from a position in the noncompetitive class or division to a position in any other class or division of the classified service" under certain stated conditions and contingencies. Examination of the entirety of the pertinent statutory and rule authority indicates that the policy objective is to prevent giving an individual in the labor or non-competitive class another distinctly different kind of job in the competitive class. This is patently not the case here. These plaintiffs were not being given different jobs  they were doing the same kind of work they had previously done. Only their job titles were changed by the reclassification. R.S. 11:24-1 and 3 give the Commission broad authority to determine the proper classification of employments, and this authority obviously encompasses the power to determine which job classifications belong to which class or division of the classified service. R.S. 11:22-4, as amended, specifically provides that the Commission may "from time to time as [it] may deem proper" revise the class assignment of a particular office or position ("class" here clearly meaning division; see also Rule 64(5)).
It is settled that this broad revisionary power will not be interfered with by the courts unless manifest abuse thereof *117 appears. Mullin v. Ringle, 27 N.J. 250, 256 (1958); Carls v. Civil Service Commission, 17 N.J. 215, 221 (1955). There can be no doubt that the Commission did not abuse its authority in determining in 1953 that the work plaintiffs were doing called for retitling their position and that the new title properly belonged in the competitive division. Furthermore, despite the absence in the record of an explicit indication of the precise time when and means by which the Commission made the reclassification, it is plainly implicit in all the Commission actions since 1954 outlined above (including the approval of the assignment of the nine excess sanitarians as park and tree foremen) that the reclassified positions, as such, were approved. There is nothing in the statutes requiring approval in any particular manner. Moreover, although departmental Rule 9 includes the provision that "positions in the noncompetitive and labor divisions shall not be allocated or reallocated to the competitive division," the apparent comprehensiveness of this language, which is contrary to the authority granted to the Commission under R.S. 11:22-4, is obviously qualified by Rule 14, which is concerned expressly with allocations and reallocations and specifies the conditions under which such a reallocation may be made. That rule provides that "Whenever * * * the duties of an existing position are so changed that in effect the old position as described no longer exists and in its place there is created a position which should be allocated to a different class," upon report of this fact by the appointing authority, the Commission may then reclassify or reallocate the position to its appropriate class. In any case, the civil service department cannot by rule circumscribe its jurisdiction to narrower limits than designated by statute. The proofs indicate that plaintiffs' previous titles did not in fact adequately describe and define the work they were performing; the new title did. The evidence is that a considerable degree of technical knowledge and skill is involved in the doing of this work.
*118 Thus, since the Commission had the statutory power to retitle the job and to reallocate plaintiffs' positions to another class, and actually did so, the question remains as to whether or not plaintiffs were entitled to retain their status as permanent holders of the new title. Rule 14 provides, as to the right of the incumbent of the old position to remain in the new position, that "If a position is reallocated to a class for which the maximum rate of pay is higher it shall, if practicable, be filled by promotion in the usual manner * * *." (Cf. Rule 64 (15), which defines "promotion" as increase in maximum salary and change of duties and responsibilities. Under that definition these were not promotions.) Promotion "in the usual manner" presumably refers to a qualifying examination, and since the "promotion" here was to a vacant position in the competitive class, the promotional procedure would presumably be governed by N.J.S.A. 11:22-34, which section qualifies the necessity of an examination by the language, "is consistent with the best interests of the service." See also R.S. 11:21-3.
It has been held that commission approval of municipal promotion action is proper without examination where merit is proved by long and competent service and the duties of the new position are not substantially different from those already being performed; and, furthermore, that mere approval by the Commission of the city's appointment under these circumstances constitutes a valid exercise of its discretion to eliminate the examination requirement. Falcey v. Civil Service Commission, 16 N.J. 117, 123-125 (1954); see also Flanagan v. Civil Service Department, 29 N.J. 1 (1959); DeStefano v. Civil Service Commission, 130 N.J.L. 267 (E. & A. 1943); cf. Jersey City v. Babula, 56 N.J. Super. 533 (App. Div. 1959). It would seem obvious that it is within the Commission's discretion to determine that examination is unnecessary where the duties under the new title are the same and are being competently performed. So, also, is it within the discretion of the Commission to determine that where the "promotion" is resultant from a *119 new classification into the competitive class of a job previously assigned to the labor class the transfer should not carry promotional rights within the competitive class for those so transferred. See 3 McQuillin, Municipal Corporations (3d ed. 1949), § 12.134, p. 478. General authority for this exercise of discretion is implicit in the statutory and rule scheme referred to above and is obviously contemplated by R.S. 11:22-32, which provides that transfers, inter alia, shall be made under commission rules in pursuance of the statute. While we find and the parties cite no specific regulatory codification of the procedure to confer the RAR status mentioned above, it appears to us to be compatible both with the provisions and policies of the Civil Service Act and to be an entirely reasonable act of administrative discretion. There is no doubt that it is a settled practice of the Commission. Dr. Merrigan, explaining the RAR procedure in application to certain other transfers, considered to be appropriate, from laborer tree-trimmer in the labor division to tree-trimmer in the competitive division, noted that the transfers took place without competitive examination. He said:
"The basis for that action was, since the individual had permanency in the title with the set of duties attached to that title, the fact that as a result of the administrative review, we changed his title and changed the division of classification, did not affect his permanency, it affected his status only to the extent that he became a tree trimmer with all the emoluments involved, but was restricted in that title."
Plaintiffs, as we have seen, were appointed to the new positions by resolution. The Commission in 1953 approved both the reclassification of the position and plaintiffs' appointments thereto on a RAR basis. These appointments were made pending and subject to a further investigation and review, as provided for in the statement of administrative policies and procedures. The meaning of this condition is spelled out in Rule 53, dealing with transfers, which provides that when a transferred employee does not render *120 satisfactory service, he may be returned to his position within 30 days. There was never any claim that plaintiffs did not satisfactorily perform under the new title. There was no attempt within 30 days to transfer them because of unsatisfactory performance. It is therefore clear that long before the November 1954 commission rescission plaintiffs' rights to those positions in a RAR status were completely perfected, and even the rescission, if it was otherwise proper, could not affect those rights since the substance of the 1953 commission approval was subsequently carried out administratively.
The position of the Commission  vide its decision in the first hearing  that the transfers made here required as a condition a complete municipal reclassification plan approved by the Commission, is not sustainable. No statute, rule or fixed practice is cited as authority therefor. It is enough that plaintiffs' positions were reclassified. There is no authority or reasonable justification precluding a progressive reclassification. And the commission action of November 1954, approving a schedule of other reclassified positions in the city service, demonstrates that the Commission had in fact adopted a piecemeal or progressive approach to approval of the general Newark reclassification program. So long as that approach had any reasonable basis, and there is nothing to indicate the contrary, the effectiveness of the action taken thereunder cannot be impugned merely because the entire reclassification was not made and approved at one time.

II.
Even assuming that the plaintiffs could not have been permanent in the reclassified status until their qualifying examination, we are satisfied that once they passed the qualifying interview, as they in fact did, their right to the positions as retitled became settled. The only argument of the city contra is that it is not obliged to appoint persons *121 to particular positions merely because of commission certification of such persons as qualified therefor. Ordinarily this is true. See N.J.S.A. 11:22-16; also Rule 47. But R.S. 11:22-32 specifically excepts from this rule such positions as are filled by "promotion, reinstatement, transfer or reduction under the provisions of this subtitle and the rules made in pursuance thereof * * *." It was the city itself which took the initiative in this matter by formally transfering plaintiffs in 1953 to the park and tree foreman position which it had created, subject to the rules and regulations of the Commission and the statutes. In passing administratively upon these city actions the Commission made its approval thereof dependent upon qualification of the individuals. Such qualification having taken place in December 1956, the original transfers immediately became effective as of that date, almost six months before the purported final approval by the Commission of their return to the labor division. That approval can have no higher effect than the city's right to request it. The latter was divested by plaintiffs' qualification under the earlier city action and commission approval thereof. Any other conclusion would violate the spirit as well as the letter of the act and give plaintiffs just cause to feel that their rights had been destroyed by manipulation for entirely extraneous purposes.
Plaintiffs have permanent legal status in the position of park and tree foreman.

III.
The economy argument advanced the city is of no avail. The city did not decide to dispense with the particular services being rendered by these plaintiffs, whether for economy reasons or otherwise. The park and tree maintenance work being done by these employees was not to be discontinued. The fact that the city had decided to reduce the number of men doing the unquestionably different sanitation work does not constitute an "economy" justification *122 for moving some of them into plaintiffs' positions, the only apparent motivation therefor being to avoid reducing the pay of the former. This was neither an abolition of plaintiffs' positions nor a dispensation with their services, for purposes of economy. See Greco v. Smith, 40 N.J. Super. 182, 189 (App. Div. 1956).
Reversed and remanded to the Civil Service Commission for action consistent with this opinion.