COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, JAMES SERRITELLA, AND STEPHEN RENDA, PLAINTIFFS-APPEL- LANTS, v. NEW JERSEY DEPARTMENT OF LABOR AND IN- DUSTRY, JOHN J. HORN, COMMISSIONER, NEW JERSEY CIVIL SERVICE COMMISSION, S. HOWARD WOODSON, JR., PRESIDENT, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 23, 1983—Decided June 2, 1983.

Before Judges BISCHOFF, J.H. COLEMAN and GAULKIN.

*Jesse H. Strauss* argued the cause for appellants (*Reitman, Parsonnet, Maisel and Duggan,* attorneys; *Jesse H. Strauss,* on the brief).

*Mark J. Fleming,* Deputy Attorney General, argued the cause for respondents (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Deputy Attorney General, of counsel; *Mark J. Fleming,* on the brief).

PER CURIAM.

The crucial question raised by this appeal is whether *N.J.A.C.* 4:1–15.7 and *N.J.A.C.* 4:1–16.2 require all provisional and probationary employees of a State Agency to be discharged before permanent employees are exposed to a lateral transfer, demotion or layoff. The Civil Service Commission concluded that the provisional and probationary employees need not be discharged

before "touching" the permanent workers. The Union has appealed. We now affirm.

On or about May 8, 1981 all employees in the Department of Labor and Industry (L & I) received a notice of layoff advising that due to budget cuts there would be a reduction in force effective September 21, 1981, which would be achieved by "reassignment, demotion or separation." The layoffs were necessitated by significant state and federal cuts in the department's budget. The layoff was to be effected in two stages. The first stage occurred on June 29, 1981 at the close of the last pay period before the beginning of the 1982 state fiscal year. The second stage took effect on September 21, 1981 at the end of the final pay period before the federal 1982 fiscal year commenced on October 1, 1981.

The Department of L & I determined how many positions in particular job classifications would be abolished and the locations throughout the State where these positions would be eliminated. Some of the positions selected for abolition were occupied by permanent employees and some by provisionals or probationaries. Some positions not slotted for abolition were occupied by provisionals or probationaries.

Upon determination of what positions were to be eliminated, permanent employees in affected positions were interviewed and advised of their lateral displacement, demotional or special reemployment rights. They were advised of comparable positions and/or lower level titles throughout L & I over which they possessed superior employment rights and were given an independent choice as to which position he or she would exercise those rights against.

Provisional and probationary employees in non-abolished positions were not affected by the immediate reduction in force. They would be divested of their positions only if bumped by a permanent employee.

Plaintiffs agree that as a practical matter, some permanent employees were unable to accept positions occupied by provisionals and probationaries because of the geographic diversity. An interviewer in Atlantic City, for example, would find it difficult to accept a similar position currently held by a provisional in Hackensack.

Among other job positions, it was determined prior to the commencement of the employee interviews that 66 interviewer positions in the Division of Employment Services were to be abolished by the department. As of August 4, 1981, there were 74 provisional interviewers. As a result of the layoff procedure used by the department, approximately 17 permanent interviewers were targeted for layoff on September 21, 1981 and approximately 45 permanent interviewers were to be demoted. Approximately 11 provisional interviewers were to be retained.

There are two regulations implicated in this appeal. *N.J.A.C.* 4:1–15.7 provides:

(a) The change of an employee from a position in one class to another position in the same class in the same organization unit shall be called an assignment or reassignment and may be made at any time as the needs of the service require. Such assignment or reassignment shall be within the discretion of the appointing authority.

*N.J.A.C.* 4:1–16.2 provides:

(a) No permanent employee shall be laid off until all emergency, temporary and provisional employees and all probationers, who are serving their working test period, holding positions in the same class in the organization unit are separated; nor shall a permanent employee be laid off except in accordance with the procedure as prescribed in these rules.

(b) Whenever possible, such employee shall be demoted in lieu of layoff to some lesser office or position in the same organization unit as determined by the chief examiner and secretary.

Plaintiffs argue that the procedures utilized by the State in effectuating the L & I layoff violated *N.J.A.C.* 4:1–16.2. This claim is based on the fact that certain provisional and probationary employees were retained while permanent employees were laid off or demoted.

The Commission found that the longstanding practice of Civil Service to offer displaced permanent employees the right to

positions held by provisional, probationary and permanent employees with less seniority is consistent with the applicable regulations. The Commission stated "to require that all provisional and probationary employees in a title be terminated prior to affecting any layoff action against permanent employees in that title would result in disruption from a managerial standpoint. The position would be vacated during the pendency of the layoff thus adversely affecting essential services to the public."

To further explain the reason for its decision, the Commission stated:

The longstanding practice of Civil Service is to offer displaced permanent employees the right to positions held by provisional and probationary employees as well as to positions held by permanent employees with less seniority. The displaced permanent employees in some cases elected to be demoted or laid off rather than to take a position occupied by a provisional or probationary employee. Their reasons for this choice were due to the geographical location of the position or other factors about the specific position which made it undesirable to the particular permanent employee.

The Commission appropriately relied on *Handabaka v. Division of Consumer Affairs*, 167 *N.J.Super.* 12 (App.Div.1979), as support for its decision. In *Handabaka,* the issue was whether a public employer was required to appoint a permanent employee to a position held by a provisional employee for more than four months in violation of *N.J.S.A.* 11:10–3. The court disapproved of wholesale dismissals of provisional employees even in the face of a clear violation of *N.J.S.A.* 11:10–3. The court accepted the State's arguments that expediency and necessity at times militate against wholesale layoffs of provisional employees. The court wrote:

We are far from unsympathetic. Wholesale dismissal of all provisional employees who have served beyond the four-month limitation could seriously impede the disposition of essential public matters. As a practical matter, we are not presently requiring any such course of action. See, *Robinson v. Cahill,* 62 *N.J.* 473, 520–521 (1973), *cert.* den. *sub nom. Dickey v. Robinson,* 414 *U.S.* 976, 94 *S.Ct.* 292, 38 *L.Ed.2d* 219 (1973); *Robinson v. Cahill,* 67 *N.J.* 333, 347–348 (1975), *cert.* den. *sub nom. Klein v. Robinson,* 423 *U.S.* 913, 96 *S.Ct.* 217, 46 *L.Ed.2d* 141 (1975). Nonetheless, the four-month limitation on the employment life of a provisional employee is the law. Government itself should be particularly as-

siduous in its observance. Moreover, where its violation works an injustice on a particular applicant for permanent appointment, as appellant contends it did here, prompt corrective measures should be taken. An administrative rule, protective of the rights of a fully qualified applicant for permanent appointment over those of a provisional employee, might well serve to mitigate the harsh results apparent in the present matter. [*Id.* at 14–15]

We are satisfied that termination of all provisional and probationary employees prior to the implementation of layoffs of any permanent employee would cause chaos. Under the current Civil Service practice, a permanent employee may opt to fill any position held by a provisional or probationary employee and thus displace the employee who lacks permanent status. This complies with the protection afforded permanent employees by *N.J.A.C.* 4:1–16.2. Such a procedure avoids disruption of an agency while at the same time affording priority and protection to permanent employees.

It is an undisputed fact in the present case that permanent employees, after they were given an independent choice, elected to be demoted or laid off rather than to take particular positions occupied by some nonpermanent employees. This fact illustrates the substantial likelihood that provisional positions would be left vacant for some period of time if all provisionals were laid off prior to any action against permanent employees. This is precisely one of the evils sought to be avoided by *N.J.S.A.* 11:10–3 and *Handabaka.*

The decision of the Commission was not arbitrary, unreasonable or in derogation of controlling statutes or regulations. On the contrary, "the opinion as to the construction of a regulatory statute of the expert administrative agency charged with the enforcement of that statute is entitled to great weight and is a 'substantial factor to be considered in construing the statute.'" *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 575 (1978) (quoting *Youakim v. Miller,* 425 *U.S.* 231, 235, 96 *S.Ct.* 1399, 1402, 47 *L.Ed.*2d 701 (1976)).

Accordingly, the decision of the Commission is affirmed.