Roberta FARBER, Plaintiff,

v.

CITY OF PATERSON, Jose Torres, Elieser Burgis, Marge DiPasquale, and Local 3474, American Federation of State, County & Municipal Employees, AFL–CIO, Defendants.

No. CIV 03–4535(DRD).

United States District Court, D. New Jersey.

June 7, 2004.

James E. Patterson, Esq., Graham, Curtin & Sheridan Morristown, NJ, Attorneys for Plaintiff.

Alberto Rivas, Esq., John M. Podesta, Esq., Lite DePalma Greenberg & Rivas, LLC, Newark, NJ, Attorneys for Defendants City of Paterson, Jose Torres, Elieser Burgos and Margie DiPasquale.

David B. Beckett, Esq., Szaferman, Lakind, Blumstein, Blader, Lehmann & Goldshore, P.C. Lawrenceville, NJ, Attorneys for Defendant Local 3474.

### OPINION

DEBEVOISE, Senior District Judge.

Roberta Farber ("Farber"), a former employee of the City of Paterson ("the City"), was discharged on July 1, 2002. She brings suit against the City and several of its officials and employees ("City Defendants") alleging that the discharge violated her rights under the United States and New Jersey constitutions, and the public policy of New Jersey. She also brings suit against her union—which refused to take her grievance over the discharge to arbitration—for breach of its duty of fair representation. Finally, she brings a conspiracy charge against both the union and the City Defendants. All defendants have moved to dismiss.

The court will (1) grant the City Defendants' motion to dismiss Farber's claims under the federal and state constitutions that the City Defendants deprived her of her property interest in her job without due process, (2) deny in all other respects the City Defendants' motion and (3) deny the union's motion to dismiss in its entirety.

Farber also moves for leave to amend her Complaint. None of the defendants oppose this motion, and the court will grant it. Throughout this Opinion, the court will refer to the Amended Complaint as the "Complaint."

### I. FACTUAL BACKGROUND [1]

#### A. Farber's employment by the City of Paterson

The City hired Farber in or about 1991. She became the Assistant Director for Economic and Industrial Development ("Assistant Director") in or about 1994 and held this position until she was discharged in 2002. As Assistant Director, she reported to the Director of Economic and Industrial Development, who reported to the Director of Community Development who, in turn, reported to the Mayor of Paterson.

As Assistant Director, Farber served as Coordinator of the City's Urban Enterprise Zone program. This was an administrative, rather than a policy-making, position; Farber's job was to implement policies established by others.

Farber was a dedicated employee who served during the administrations of both

---

1. The facts are recited here as stated in the Complaint, and are supplemented with information about the New Jersey Civil Service Act.

Mayor William Pascrell (a Democrat) and Mayor Martin G. Barnes (a Republican). She received positive written and verbal performance evaluations throughout the course of her employment by the City.

## B. *The status of Farber's employment under the New Jersey Civil Service Act*

The City of Paterson has adopted the New Jersey Civil Service Act, N.J. STAT. ANN. § 11A:1–1, *et seq. See, e.g., City of Paterson v. Paterson Police P.B.A. Local,* 184 N.J.Super. 591, 446 A.2d 1244, 1248 (N.J.Super.Ct.App.Div.1982). Public employment in the City is thus governed by that statute's provisions.

Under the New Jersey Civil Service Act, many public employees in the competitive division of the career service [2] are *regularly* appointed; after successful completion of a working test period, these employees acquire tenure and become "permanent." N.J. STAT. ANN. § 11A:4–13 (a); N.J. ADMIN. CODE tit. 4A, § 1–1.3. Under certain circumstances, however, a public employee in the competitive division of the career service may be *provisionally* appointed. Provisionally appointed employees hold their jobs pending the appointment of a permanent employee. Provisional appointments are in no case to last longer than twelve months. N.J. STAT. ANN. § 11A:4–13 (b); N.J. ADMIN.CODE tit. 4A, § 4–1.3.

When Farber initially went to work for the City, it was as a provisional appointee.

Despite the fact that under state law provisional appointments are not to last longer than 12 months, however, her employment status remained provisional up until the time of her termination. This is because her employer did not complete the multi-step process that must occur for a provisional employee to become a permanent employee (see section II(B)(1)(a)(ii) of this Opinion).[3]

In March 2002, at the City's direction, Farber took and passed the civil service examination for the position of Assistant Director. She was certified for the position by the New Jersey Department of Personnel ("DOP"), effective July 1, 2002.

## C. *Mayor Torres and the newspaper article*

Defendant Jose Torres ("Mayor Torres") was elected Mayor of Paterson in May 2002. He was scheduled to be sworn in on July 1, 2002.

Farber was a supporter of former Mayor Barnes and his policies. She openly expressed this support, and the defendants were aware of it.

After his election, Mayor Torres expressed his intent to terminate from employment supporters of the previous administration. In a newspaper interview,[4] Mayor Torres specifically identified Farber as such a supporter, and stated (falsely) that he had requested her resignation.

---

2. Under the New Jersey Civil Service Act, public service positions are categorized as "unclassified" positions or "classified" positions. Classified positions are further subdivided into "senior executive" and "career" positions. N.J. STAT. ANN. § 11A:3–1; *Morris v. Coye,* No. 88–1287, 1989 WL 76496, at *6 (D.N.J.1989). Career positions are further sub-divided into "competitive" and "noncompetitive" positions. N.J. STAT. ANN. § 11A:3–2.

3. Before she was discharged, however, Farber was led to believe (1) that all that was required for her to become a permanent employee was the performance by the City of a simple ministerial action designating her as such, and (2) that she would or had already become a permanent employee. Complaint ¶ 4.

4. It is unclear from the Complaint whether this interview was given and published before or after Farber was fired.

In the same interview, Mayor Torres indicated that Farber's work (and the work of some of her colleagues whose employment had been terminated) was substandard, and that consequently she and they would be or had been terminated. Specifically, he stated that his "goal is not to be a hatchet man, but if you can't cut the mustard, then I'm sorry."

Finally, Mayor Torres implied in the interview that Farber and her colleagues were not hard-working when he vowed that under his administration there would be "no more two hour lunches." These comments and their innuendos were false and adversely affected Farber's reputation in the community.

## D. *Farber's termination*

At 10:00 a.m. on July 1, 2002—the day Mayor Torres was sworn in—Farber received a letter informing her that the City was terminating her employment, effective at noon that day. The Complaint does not specify whether the letter included an explanation for the termination, or notification to Farber that she had hearing or appeal rights. Because Farber refers to the termination as "summary," however, the court assumes the letter did not include any of these things.

The letter stated that it was possible to so terminate Farber because she was a provisional employee who did not possess job protection rights. The letter was signed by the City of Paterson's Assistant Personnel Director Marge DiPasquale ("DiPasquale") and dated June 28, 2002. Copies of the letter were sent to Mayor Torres and City of Paterson Business Administrator Elieser Burgos ("Burgos"), but not to Farber's superiors.[5] After Farber was terminated, the City hired DiPasquale's niece to replace her.

## E. *The union's involvement*

Farber had been a member of Local 3474, American Federation of State, County & Municipal Employees, AFL–CIO ("the union" or "Local 3474") in good standing since 1991 and had consistently paid her monthly dues. After she was terminated, she asked the union to prosecute a grievance on her behalf. The grievance presumably would have alleged that Farber's termination violated a term of the collective bargaining agreement ("CBA") that governed her employment, *see* N.J. STAT. ANN. § 34:13a–5.3, although Farber does not cite or quote the CBA in her Complaint.

At the time Farber approached the union, Manuel Ojeda ("Ojeda")—who was known to be a political ally and supporter of Mayor Torres—was its President. The union set about reviewing Farber's termination. A meeting between the union and City representatives was arranged to discuss the matter. The union refused to allow Farber to bring her individual attorney to the meeting. Furthermore, Ojeda, who was supposed to attend and participate in a meeting, failed to attend.

Ultimately, the union refused to pursue Farber's claims to arbitration.[6] It stated that it would not arbitrate the claims because she was a provisional employee. Shortly thereafter, Mayor Torres appoint-

---

**5.** Farber asserts that Mayor Torres had no authority to direct her termination because he had not yet been sworn in when the letter was written, and that DiPasquale had no authority to issue the letter without the direction of Farber's superiors (which she did not have). These are complaints she presumably would have brought up at a hearing had she been provided with one.

**6.** The Complaint does not describe the grievance procedure established in the CBA, or indicate through how many steps of that procedure the union proceeded before it refused to assist Farber any further.

ed Ojeda to the position of Director of Public Works for the City.

### F. *The Complaint*

Farber filed a Complaint in this court in September 2003 seeking reinstatement, compensatory and punitive damages, attorneys' fees and costs. The Complaint alleges that she was terminated because of her affiliation with and support of former Mayor Barnes' administration, in violation of her rights of association and free speech. The Complaint accordingly includes (1) a claim under 42 U.S.C. § 1983 (" § 1983") for violation of the First Amendment of the United States constitution, (2) a claim for violation of the counterpart provisions of the New Jersey constitution (N.J. Const. Art. I, ¶¶ 5 & 6), and (3) a claim for wrongful discharge in violation of New Jersey public policy, against the City Defendants. It also includes a claim under 42 U.S.C. § 1985(3) (" § 1985(3)") against the City Defendants and Local 3474 alleging conspiracy to violate Farber's First Amendment rights.

The Complaint also alleges that Farber was deprived of protected interests without due process of law in two distinct ways. First, by summarily terminating her, Farber alleges, the City Defendants deprived her without due process of her property interest in an expectation of continued employment. Second, by defaming her in the newspaper article in connection with her termination, Farber alleges, Mayor Torres deprived her without due process of her liberty interest in her reputation. The Complaint thus includes (1) a § 1983 claim for violation of the Fourteenth Amendment of the U.S. constitution and (2) a claim for violation of the analo-gous provision of the New Jersey constitution.[7]

Finally, the Complaint alleges that when the union refused to pursue Farber's grievance, it breached the duty of fair representation imposed on it by the New Jersey constitution and the New Jersey Employer–Employee Relations Act, N.J. STAT. ANN. § 34:13A–5.3.

### G. *The motions to dismiss*

The City Defendants have moved under FED.R.CIV.P. 12(b)(6) to dismiss Farber's federal and state constitutional claims for violation of her procedural due process rights, her wrongful discharge claim, and her § 1985(3) conspiracy claim. They have *not* moved to dismiss Farber's federal and state constitutional claims against them for violation of her rights to freedom of association and speech.

The union has moved to dismiss Farber's § 1985(3) claim and her claim for breach of the duty of fair representation.

The court will dismiss Farber's claims that the City Defendants deprived her of her property interest in her job without the due process required by the federal and state constitutions. It will deny the motions to dismiss (1) her federal and state constitutional claims against Mayor Torres for deprivation without due process of her liberty interest in her reputation, (2) her wrongful discharge claim against the City Defendants, (3) her claim against the union for breach of the duty of fair representation, and (4) her § 1985(3) conspiracy claim against all of the defendants.

---

7. Though Farber does not identify it, that provision is Art. I, ¶ 1 of the New Jersey constitution. *See In the Matter of Pub. Serv. Elec. and Gas Co.'s Rate Unbundling and Restructuring Filings*, 330 N.J.Super. 65, 748 A.2d 1161, 1182 (2000) ("The Fourteenth Amendment of the United States Constitution provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.' Article I, ¶ 1 of the New Jersey Constitution protects similar interests").

## II. *DISCUSSION*

### A. *Standard of review*

In analyzing the motions to dismiss, the court must accept the allegations in the Complaint as true, and draw all reasonable inferences in favor of Farber. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir.2002). The court will not dismiss Farber's claims unless it appears beyond doubt that Farber could prove no set of facts in support of her claims which would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### B. *The procedural due process claims*

As explained, Farber alleges that she had a property interest in her expectation of continued employment by the City, and that the City Defendants deprived her of that interest when they summarily terminated her. She also alleges she had a liberty interest in her reputation, and that Mayor Torres deprived her of that interest when he defamed her in the newspaper interview. She claims both of these deprivations triggered the requirements of procedural due process, and that the City Defendants' failure to provide her that process violated the federal and state constitutions.

The court will dismiss Farber's claims that the City Defendants deprived her of a property interest without the process required by the federal and state constitutions when they terminated her. The court will do this because it does not have jurisdiction to determine whether Farber had a property interest in her expectation of continued employment by the City in the first place—only the DOP does. The court will deny the motion to dismiss Farber's other procedural due process claims, however, because it finds that (1) Farber did have a liberty interest in her reputation, and (2) she has stated a claim for deprivation of that interest without due process of law.

\* \* \* \* \* \*

To state a claim under § 1983 [8] for deprivation of procedural due process rights, a plaintiff must allege that (1) the individual interest of which she claims she was deprived is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to her did not provide "due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir.2000).

### 1. *Farber's termination*

The court must determine whether the City Defendants infringed upon a property interest when they summarily terminated Farber (a question of law), and, if so, whether Farber has alleged that the proper pre- or post-deprivation "process" was unavailable to her.

### a. *Did Farber have a property interest in her job?*

■ "There is generally not a property interest in continued public employment unless a claimant can demonstrate a 'legitimate claim of entitlement to it.'" *Dungan v. Slater*, 252 F.3d 670, 676 (3d Cir.2001) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). *See also Latessa v. New Jersey Racing Comm'n*, 113 F.3d 1313, 1318 (3d Cir.1997) ("To have a property interest in a job or job benefit, an employee must have a legitimate claim of

---

**8.** Section 1983 imposes civil liability upon any person who, under color of state law, deprives another person of any rights, privileges, or immunities secured by the constitution or laws of the United States. 42 U.S.C. § 1983. The City Defendants do not dispute that they were acting under color of state law when they engaged in the conduct at issue here.

entitlement, not just a unilateral expectation.").

Property interests are not generally created by the constitution, but rather "are created and their dimensions ... defined by existing rules or understandings that stem from an independent source such as state law." *Gikas v. Washington Sch. Dist.*, 328 F.3d 731, 738 n. 4 (3d Cir.2003) (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. 2701).

### i. *Farber was a provisional employee*

■ Pursuant to the New Jersey Civil Service Act and caselaw interpreting it, public employees who are appointed to their positions permanently ("permanent employees") can be discharged or demoted only for cause, and have pre-termination appeal and hearing rights. N.J. STAT. ANN. § 11A:2–13–14; N.J. ADMIN. CODE tit. 4A, § 2–2.1–2.3, –2.5, –2.8. *O'Malley v. Dep't of Energy*, 109 N.J. 309, 537 A.2d 647, 649 (1987); *Melani v. County of Passaic*, 345 N.J.Super. 579, 786 A.2d 133, 137 (2001). Public employees thus have a legitimate claim of entitlement to—and a property interest in—continued employment.

Public employees who are appointed to their positions provisionally ("provisional employees"), however, do not enjoy the same job protection; they can be terminated at any time at the discretion of the employer. *O'Malley*, 537 A.2d at 649; *Melani*, 786 A.2d at 137.[9] Provisional employees thus do not have a legitimate claim of entitlement to—and thus a property interest in—continued employment. *Williams v. Civil Serv. Comm'n*, 66 N.J. 152, 329 A.2d 556, 558 (1974); *Grexa v. State Dept. of Human Services*, 168 N.J.Super. 202, 402 A.2d 938, 941 (1978).

The City Defendants argue that Farber's claim that they deprived her of her employment without due process of law must fail because at the time of her termination she was a provisional employee, and thus had no property interest in the position she lost. Farber claims that though technically her employment status was provisional on July 1, 2002, she had a property interest in her position because

9. Now that N.J. ADMIN. CODE tit. 4, § 1–16.8(b) has been repealed, the New Jersey Administrative Code no longer contains a provision explicitly stating that provisional employees may be terminated at any time at the discretion of the appointing authority. The section of the Code that discusses the kinds of causes that warrant the removal of permanent employees, however, is explicitly marked as applying "only to permanent employees," N.J. ADMIN. CODE tit. 4, § 2–2.1, and New Jersey courts and administrative authorities continue to affirm that there is a difference between the job status of a provisional appointee and the job status of a permanent appointee. *See, e.g., Melani*, 786 A.2d at 137 (unlike permanent employees, "provisional employees can be terminated at any time at the discretion of the employer"); *Matter of Chief Clerk*, 282 N.J.Super. 530, 660 A.2d 1217, 1218 (1995) ("A provisional appointee does not enjoy the job protection accorded to a permanent employee"); *Matter of Wiggins*, 242 N.J.Super. 342, 576 A.2d 932, 933 (N.J.Super.Ct.App.Div.1990) (unlike permanent employees, provisional employees have no right to appeal when they are terminated); *Ravenda v. Boro of Lodi*, 2002 WL 1998987 (N.J. Adm.2002) ("A provisional appointee does not enjoy the job protection accorded to a permanent employee, nor is such an appointee entitled to the tenure rights of an employee made permanent by regular appointment ... Ordinarily, permanent employees can be discharged or demoted only for cause, and they have pre-termination appeal and hearing rights; however, provisional employees can be terminated at any time at the discretion of the employer"); *In the Matter of Warren County Prosecutor's Office, Respondent, and Communication Workers of America, AFL–CIO, Local 1031, Charging Party; Warren County Prosecutor's Office, Respondent, and Katherine Bergmann, Appellant*, 26 NJPER P 31091, Apr. 28, 2000 (it is a "long-established principle that [provisional] employees serve at the will of the appointing authority").

she would have converted to permanent status but for the City's erroneous failure to complete the conversion process.

### ii. *Farber might nevertheless have had a property interest in her job because, absent the City's alleged negligence, she likely would have become a permanent employee*

For a provisional employee to become a permanent employee under the New Jersey Civil Service Act, four things must happen: (1) the employee must take and pass a civil service examination for her job title, N.J. STAT. ANN. § 11A:4–1; (2) the Commissioner of Personnel must establish a list of eligible candidates, N.J. STAT. ANN. § 11A:4–4 (a), and place the employee's name on that list; (3) the Commissioner of Personnel must certify the three eligible persons who received the highest rankings on the list, N.J. STAT. ANN. § 11A:4–4 (b),– 8; and (4) the relevant appointing authority must choose the employee's name from among those three, and appoint her to the position, N.J. STAT. ANN. § 11A:4–8.[10]

Farber claims she had taken the civil service examination for her title and been certified, but had not yet been appointed to her position permanently at the time she was terminated. She alleges that she should not be deprived of the job protection to which permanent employees are entitled, however, because her technical failure to achieve permanent employment status was exclusively the fault of the City.

It is the responsibility of the appointing authority to notify the Commissioner that he needs to initiate the process that enables the appointment of a permanent employee. A public employer who makes a provisional appointment is obligated to send "new hire" forms to the DOP for

approval. N.J. ADMIN. CODE tit. 4A, § 1.10. The DOPs receipt of these forms, *inter alia*, alerts it that it must take appropriate steps to schedule and offer a civil service examination and prepare an eligible list. N.J. STAT. ANN. § 11A:4–5; *Kyer v. City of East Orange*, 315 N.J.Super. 524, 719 A.2d 184, 188 (1998). If the examination is not offered, the provisional employee cannot become permanent. Farber raises the question whether a provisional employee should be made to remain without the job protections that come with permanent employment solely because of her appointing authority's neglect.[11]

On two recent occasions the New Jersey Superior Court, Appellate Division addressed this question. The court was confronted with wrongful termination cases brought by a provisional public employee who, like Farber, had served satisfactorily in her position for significantly longer than twelve months, but had never attained permanent status because her employer never sent "new hire" forms to the DOP for approval. *Melani v. County of Passaic*, 345 N.J.Super. 579, 786 A.2d 133 (2001) and *Kyer v. City of East Orange*, 315 N.J.Super. 524, 719 A.2d 184 (1998). In each case, the plaintiff was summarily terminated, and her employer justified its action with the argument that, because she was a provisional employee, it was entitled to fire her at its discretion.

In both cases the court found that it was unfair for a long-term employee to remain in a provisional status—without the protection of the Civil Service Act and vulnerable to summary termination—merely on account of her employer's neglect of its regulatory duty to initiate the examination process. The court declined to estop the

---

10. For a general discussion of the process, *see, e.g., In the Matter of Code Enforcement Officer*, 349 N.J.Super. 426, 793 A.2d 839 (2002).

11. Farber claims it is the City's fault that she did not attain permanent status, Complaint ¶ 4, but does not specify all of the mistakes she believes the City made in this regard.

plaintiff's employers from terminating her, however, because, *inter alia,* the New Jersey Supreme Court had precluded that solution in a similar case. *See O'Malley,* 537 A.2d at 650–52.

The court did hold, however, that the employee was entitled to (1) a retroactive determination of her rights in her job (i.e., whether, absent employer neglect, she would have attained permanent status before her termination), and, if so, (2) an appropriate remedy for the summary termination she suffered which, had she the permanent status she likely deserved, would have been prohibited. Though the employee was entitled to a retroactive determination of job rights and a remedy, the court concluded, *it* was not the proper institution to make this determination or fashion this remedy. Instead, the court held that that task fell within the province of the DOP.

> Explained the *Melani* court,
> Having determined that plaintiff should be given a remedial opportunity, we are also persuaded that, as a matter of primary jurisdiction, the "affording of a remedy [more] appropriately lies with the Department of Personnel." Notably, both plaintiff's claim and the remedy for such a claim lie not only within the DOP's power but, as recognized in *Kyer,* within that agency's special expertise and competence. On a comparative scale, the DOP is in the better position by virtue of its statutory status, administrative competence, and regulatory expertise to adjudicate the matter of plaintiff's job rights and the remedy, if any, to which she may be entitled. The DOP is, after all, entrusted with the implementation of the Civil Service Act. N.J.A.C. 4A:1–1.2 (a). Under these circumstances, courts are obliged to defer to the primary jurisdiction of the executive body, referring such issues for administrative resolution.

786 A.2d at 140–41 (citations omitted). *See also Kyer,* 719 A.2d at 189.

### iii. *The DOP has jurisdiction to answer this question*

If the plaintiffs in *Melani* and *Kyer* faced an unfair situation, the situation Farber faces is even more unfair. Farber alleged that her job status remained provisional throughout her employment due solely to her employer's negligence, just as the job statuses of the *Melani* and *Kyer* plaintiffs did. Those plaintiffs each served as provisional employees for seven years, however, while Farber served provisionally for *eleven* years. Moreover, they had not taken a civil service examination at the time of their termination, where Farber had both passed the examination and been certified. If they were entitled to a retroactive determination of their job rights and a remedy, Farber certainly is.

Consequently, Farber may well have a retroactive property interest in her job that could serve as the basis for her procedural due process claim in this court. Under New Jersey law, however, it is the province of the DOP and not a state court (much less a comparatively more removed federal court) to decide this.[12]

The court thus dismisses without prejudice Farber's § 1983 claim that Defendants violated her procedural due process rights when they terminated her,[13] and suggests that she take this matter up with the DOP. Should the DOP determine that she should have been a permanent employee on July 1, 2002, Farber may if she

---

**12.** Because it is not clear whether Farber had a property interest in her job, it is irrelevant whether she has alleged that pre- or post-deprivation "process" was unavailable to her.

**13.** For all the same reasons, the court dismisses Farber's procedural due process claim under the New Jersey constitution.

wishes re-file her procedural due process claim in this court.

## 2. *The newspaper article*

■ The court must next determine whether Mayor Torres infringed upon a liberty interest protected by the Fourteenth Amendment (a question of law) when he stated or implied in a newspaper interview that he asked for Farber's resignation because professionally she could "not cut the mustard" and because she took "two hour lunches." If so, the court must determine whether Farber has pled that appropriate pre- or post-deprivation procedures were not provided.

### a. *Farber alleges deprivation of her liberty interest in her reputation*

Farber argues that Mayor Torres infringed the liberty interest arising from her stake in her reputation when he made the comments that were printed in the newspaper.[14] The United States Supreme Court held in *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) that an individual has a protectable interest in reputation. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an oppor-

tunity to be heard are essential." *Id.* at 437, 91 S.Ct. 507.

Courts have subsequently clarified, however, that "reputation *alone* is not an interest protected by the Due Process Clause." *Versarge v. Township of Clinton, New Jersey,* 984 F.2d 1359, 1371 (3d Cir.1993) (emphasis added). Rather, to make out a claim for a violation of a liberty interest in reputation, a plaintiff must show a stigma to her reputation and some accompanying infringement of a protected right or interest. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Ersek v. Township of Springfield,* 102 F.3d 79, 83 n. 5 (3d Cir.1996). Courts have referred to this as the "reputation-plus" or "stigma-plus" requirement. *See, e.g., Ersek,* 102 F.3d at 83 n. 5; *DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir.2003); *O'Donnell v. Barry,* 148 F.3d 1126, 1140 (D.C.Cir.1998).

In the public employment context, this has been interpreted to mean that an employer will have violated a liberty interest in reputation only if it defames an employee (1) in the course of or in connection with discharging her, or (2) in such a way as to negatively affect her ability to take advantage of future employment opportunities. *See, e.g., Edwards v. California Univ. of Pennsylvania,* 156 F.3d 488, 492 (3d Cir. 1998); *Homar v. Gilbert,* 89 F.3d 1009,

---

**14.** At one time, Farber would have been able to argue that her termination infringed another liberty interest, namely her liberty interest in her future employability. This is because prior to 1978, a New Jersey regulation provided that the Chief Examiner and Secretary of the Commission could remove the name of an eligible person from an employment list merely because she had been removed from public service in the past. *See, e.g., Nicoletta v. North Jersey Dist. Water Supply Comm'n,* 77 N.J. 145, 390 A.2d 90, 94–99 (1978); *Williams,* 329 A.2d at 558.

This regulation—N.J. ADMIN. CODE tit. 4, § 1:8.14—has been amended since *Nicoletta,* however, to remove the automatic disqualification of a discharged public employee from

other public employment. *See, e.g., Battaglia v. Union County Welfare Bd.,* 88 N.J. 48, 438 A.2d 530, 535 (1981); *Tuch v. Coll. of Medicine and Dentistry of New Jersey,* 177 N.J.Super. 101, 425 A.2d 302, 303 (1980); *New Jersey Dist. Court Ass'n, Inc. v. New Jersey Supreme Court,* 205 N.J.Super. 582, 501 A.2d 596, 601 (1985). The new regulation provides for automatic disqualification only if the discharged public employee had the opportunity for a hearing.

Farber did not have the opportunity for a hearing, and thus is not barred from other governmental employment in New Jersey. As a result, her liberty interest in her future employability was not infringed.

1022 (3d Cir.1996) (rev'd on other grounds); *Clark v. Township of Falls*, 890 F.2d 611, 619–20 (3d Cir.1989); *Robb v. City of Philadelphia*, 733 F.2d 286, 293–94 (3d Cir.1984).[15]

■ Further, for defamation to infringe an interest protected by the due process clause, the stigmatizing statement must be disclosed publicly, *Anderson v. City of Philadelphia*, 845 F.2d 1216, 1222 (3d Cir. 1988), and must be alleged to be false. *Fraternal Order of Police v. Tucker*, 868 F.2d 74, 82–83 (3d Cir.1989).

■ Farber alleges that Mayor Torres made to a newspaper reporter a stigmatizing and untrue statement that purportedly explained why she lost her job with the City. She therefore alleges that the statement was made in connection with her termination, that it was publicized, and that it was false. She thus sufficiently claims deprivation of a liberty interest that would trigger due process protections.

The City Defendants claim that no liberty interest was infringed because Mayor Torres' comments do not reflect the basis for firing Farber that Farber alleges: the comments alleged Farber had a weak work ethic and lacked competence, where she claims she was fired on account of her political affiliation. Without a connection between the publicized comment and the discharge, City Defendants appear to argue, no liberty interest is implicated.

The court disagrees that such a connection is required. For a liberty interest to be implicated, the defamation or charge need not reflect the actual or alleged reason the employer terminated the employee. On the contrary, the Supreme Court has suggested that the dispositive factors are temporal proximity between the defamation or charge and the discharge, and the perception in the eyes of those to whom the defamation or charge is publicized that one is related to the other.

---

**15.** As the *Ersek* court pointed out, it is not entirely clear from the caselaw that a valid claim for violation of a liberty interest in reputation can be made out when an employer defames an employee in the course of firing her if the interest she had in the job did not amount to a property interest. 102 F.3d at 83 n. 5. The Court of Appeals' decision in *Clark v. Township of Falls, supra, might* be read to suggest that nothing less than a property interest, independently protected by the due process clause, could be a sufficient "plus" in the "reputation-plus" formulation. Under this interpretation, Mayor Torres might not have deprived Farber of a liberty interest because, as the previous section suggested, it is not clear that she had a property interest in her job.

Several Supreme Court opinions, however, seem to suggest otherwise. *See, e.g., Owen v. City of Independence*, 445 U.S. 622, 633 n. 13, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (upholding lower court's decision that a nontenured employee without a protectable interest in his job could nevertheless make out a claim for violation of a liberty interest in his reputation); *Codd v. Velger*, 429 U.S. 624,

627–28, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (a name-clearing "hearing [is] required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment;" "if the employer created and disseminates a false and defamatory impression about the employee in connection with his termination ... a hearing is required" even if the employee had no property interest in continued employment); *Paul*, 424 U.S. at 709–10, 96 S.Ct. 1155 (noting that had the plaintiff in another Supreme Court case—who had no protectable interest in his job—shown that his employer defamed him, he would have had a colorable due process claim).

Because the Court of Appeals has explicitly refrained from addressing this question and resolving the ambiguity, *Ersek*, 102 F.3d at 83 n. 5, this court may follow *Owen, Codd,* and *Paul,* and hold that the fact that Farber may not have had a property interest in her job does not preclude the conclusion that Mayor Torres violated Farber's liberty interest in her reputation when her allegedly defamed her in connection with her termination from that job.

In *Owen v. City of Independence,* the Supreme Court upheld a court of appeals' ruling that the respondent city had deprived the petitioner Chief of Police of liberty without due process of law by publicizing allegedly false charges against him shortly before he was terminated even though those charges were not the officially stated reason for his termination. The Court noted

> The city—through a unanimous resolution of the City Council—released to the public an allegedly false statement impugning petitioner's honesty and integrity. Petitioner was discharged the next day. The Council's accusations received extensive coverage in the press, and even if they did not in point of fact "cause" petitioner's discharge, the defamatory and stigmatizing charges certainly "occurred in the course of the termination of employment."

> What was important, the court [below] explained, was that 'the official actions of the city council released charges against [petitioner] contemporaneous and, in the eyes of the public, connected with that charge.

445 U.S. 622, 633 n. 13 & 631, 100 S.Ct. 1398, 63 L.Ed.2d 673. *See also Cannon v. City of W. Palm Beach,* 250 F.3d 1299, 1302 n. 1 (11th Cir.2001) ("The Supreme Court's decisions do not appear to require that the stigmatizing statements must cause or result in termination of employment, only that they occur during the course of the termination.").

Because Farber claims that Mayor Torres publicly made false, stigmatizing claims about her in connection with his office's termination of her, and that these claims adversely affected her reputation in her community, she alleges deprivation of a liberty interest for the purposes of her procedural due process claim under the U.S. constitution.[16]

**b. *Farber alleges that appropriate procedures were not provided***

Because Farber had a liberty interest in her reputation at the moment she lost her job, she was entitled to some sort of opportunity to stand up for herself before or after that interest was infringed. She alleges, however, that she was not given a chance to defend herself against Mayor Torres' charges.[17] She thus states a claim for deprivation of her liberty interest in her reputation without the process the U.S. constitution requires.[18] The court will accordingly deny the City Defendants' motion to dismiss this claim.

Should Farber prevail on this claim, she would be entitled to an opportunity to refute Mayor Torres' charges against her. "The principal relief to which an individual is entitled should the government's stigmatizing comments rise to the level of a due process violation is a hearing to clear [her] name." *Ersek,* 102 F.3d at 84. *See also Owen,* 445 U.S. at 633 n. 13, 100 S.Ct. 1398; *Codd,* 429 U.S. at 627, 97 S.Ct. 882; *Roth,* 408 U.S. at 573 & n. 12, 92 S.Ct. 2701.

---

**16.** Of course, whether the claims were sufficiently stigmatizing to constitute an infringement of liberty—i.e., whether they negatively affected her reputation in the community or interfered with her ability to obtain employment post-termination-is significantly a question of fact that cannot to be answered on a motion to dismiss. *McKnight v. SEPTA,* 583 F.2d 1229, 1236–38 (3d Cir.1978).

**17.** The fact that Farber does not indicate that she affirmatively requested a name-clearing

hearing is not fatal to her claim. *Ersek,* 102 F.3d at 84 n. 8.

**18.** Unlike the U.S. constitution, the New Jersey constitution protects liberty interests in reputation even in the absence of accompanying tangible loss. *Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367, 419 (N.J.1995). Farber's parallel claim under that constitution thus also survives.

## C. *The wrongful discharge claim*

Farber claims that the City's termination of her constituted a wrongful discharge because it violated New Jersey public policy as expressed in the state constitution.[19] Specifically, she claims that her discharge—because it was motivated by her affiliation with and support for former Mayor Barnes—violated her constitutional rights to freedom of association and speech. The court will deny the City Defendants' motion to dismiss this claim because it finds that Farber has stated not one but *two* causes of action for wrongful discharge in violation of state public policy.

### 1. *Pierce claims*

In *Pierce v. Ortho Pharma. Corp.*, 84 N.J. 58, 417 A.2d 505 (1980), the New Jersey Supreme Court created a public policy exception to the doctrine of employment at will. The court held that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy" ("*Pierce* claim"). *Id.* at 512. Sources of public policy, the court has since clarified, include the New Jersey constitution. *MacDougall v. Weichert*, 144 N.J. 380, 677 A.2d 162, 167 (1996); *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 609 A.2d 11, 16 (1992); *Radwan v. Beecham Labs.*, 850 F.2d 147, 151–52 (3d Cir.1988).

### 2. *New Jersey public policy*

■ Art. I, ¶ 5 of the New Jersey constitution provides: "No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin." Art. I, ¶ 6 of that constitution provides: "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press."

■ It is the public policy of New Jersey, as enunciated in judicial interpretations of these provisions of the state constitution, that a government official violates a non-policymaking, non-confidential government employee's *rights of belief and association* when he discharges such an employee on the sole ground of her political affiliation.[20] It is also the public policy of New Jersey that a government official violates a public employee's *right to freedom of speech and expression* if he retaliates against her for uttering protected speech,[21] and the government cannot show that legitimate countervailing government interests are

---

**19.** Farber additionally claims that the public policy she alleges the City Defendants violated is also expressed in the Civil Service Act. As the court finds that Farber's termination violates state public policy as expressed in the New Jersey constitution, it need not address this claim.

**20.** The United States Supreme Court established this standard in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) to determine if an employer violated the First Amendment to the U.S. Constitution when he fired employees based on their political affiliation. New Jersey courts evaluating political affiliation-based discharge claims under the state constitution have applied the

same standard. *See, e.g. Weisel v. Hooks*, 277 N.J.Super. 78, 648 A.2d 1166 (1994).

**21.** A public employee's speech is protected if it involves a matter of public concern. Speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community. *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir.2003). Determining whether a public employee's speech is a matter of public concern is a question of law for the court. *Id.* at 413. It is likely that Farber's expressions of support for Mayor Barnes constituted speech on a matter of public concern. *See Curinga v. City of Clairton*, 357 F.3d 305, 313 (3d Cir.2004) (listing cases that held that

sufficiently strong to justify the retaliation, or that it would have taken the same action even in the absence of the protected speech.[22]

### 3. *Farber states a claim for wrongful discharge*

■ Farber alleges that hers was a non-policymaking position, and that she was terminated merely because she was affiliated with and a supporter of Mayor Barnes.[23] Complaint ¶¶ 3 & 24. She also alleges that her speech, on account of which the City Defendants allegedly retaliated against her, was protected by the federal and state constitutions. Complaint ¶ 16. She has thus clearly stated *two* causes of action[24] for wrongful discharge because she alleges that the discharge was contrary to both (1) New Jersey public policy protecting rights of association and

belief, and (2) New Jersey public policy protecting rights of free speech and expression.[25]

### 4. *City Defendants' arguments*

■ The City Defendants argue that these public policies do not protect Farber because she has no property interest in her position with the City. The New Jersey public policies protecting public employees from discharge on account of political affiliation or in retaliation for speech on a matter of public concern, however, apply to *all* public employees, regardless of whether they have property interests in continued employment. *See, e.g., Elrod v. Burns,* 427 U.S. 347, 350, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) ("non-civil-service employees" who were "not covered by any statute, ordinance, or regulation protecting them from arbitrary discharge," and who

speech regarding political elections and political candidates involved a matter of public concern). The Complaint does not include sufficient information, however, for the court to make that determination at this stage.

A government employer "retaliates" against an employee for protected speech only when the speech was a substantial or motivating factor in the alleged retaliatory action. *Baldassare v. New Jersey,* 250 F.3d 188, 194–95 (3d Cir.2001).

22. This is the standard courts apply to determine if a retaliating public employer violated the First Amendment. *See, e.g., Bd. of Comm'rs, Wabaunsee County,* 518 U.S. at 675, 116 S.Ct. 2342; *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811. Courts evaluating free speech claims under the New Jersey constitution use the same test. *See, e.g., Sunkett v. Misci,* 183 F.Supp.2d 691, 708 (D.N.J.2002).

In general, except in certain doctrinal areas not relevant here, the protections of Article I ¶ 6 of the New Jersey constitution mirror those of the First Amendment, and the New Jersey Supreme Court relies on federal constitutional principles in interpreting its own constitution's free speech provisions. *See, e.g., Sojourner A. v. New Jersey Dept. of Human Services,* 177 N.J. 318, 828 A.2d 306, 313 (2003); *Hamilton Amusement Ctr. v. Verniero,* 156 N.J. 254, 716 A.2d 1137, 1141–42 (1998).

23. Whether Farber was a non-policymaking, non-confidential government employee, and whether she was fired solely for political reasons are, of course, questions of fact. *Battaglia v. Union County Welfare Bd.,* 88 N.J. 48, 438 A.2d 530, 540 (1981).

24. *See Curinga v. City of Clairton,* 357 F.3d 305 (3d Cir.2004) (discussing cases in which a public employee is discharged in retaliation for both political affiliation and speech, thus implicating both the *Elrod* and *Pickering* doctrines; noting that in such cases the result under both doctrines usually would be the same; but apparently concluding that such cases are usually better analyzed under the *Pickering* doctrine).

25. As noted, the City Defendants have not moved to dismiss Farber's claim that their discharge of her violated her rights to freedom of association and speech under the federal and New Jersey constitutions. If they had so moved, however, the court would have held that the claims survived for all of the same reasons the wrongful discharge claim survives.

alleged they were fired or threatened with dismissal merely because they were not affiliated with the current sheriff's political party, stated a valid claim for deprivation of their right to association and belief); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (untenured teacher who alleged he was not rehired on account of his exercise of his free speech rights could establish a claim to reinstatement even though, lacking tenure, he "could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the decision not to rehire him"). *See generally, e.g. Bd. of Comm'rs, Wabaunsee County v. Umbehr*, 518 U.S. 668, 674, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996) ("our modern 'unconstitutional conditions' doctrine holds that the government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected ... freedom of speech' even if he has no entitlement to that benefit") (quoting *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)).

The City Defendants further argue, citing *Geraghty v. Township of Berkeley Heights*, 259 N.J.Super. 350, 613 A.2d 497 (1990), that Farber may not bring a *Pierce* claim against them because public employees may not bring such claims against public employers. This argument lacks merit. As a public employee, Farber is entitled to bring a *Pierce* claim against her public employer. Furthermore, this is true regardless of whether Farber was a provisional public employee or will be found retroactively to have been a permanent public employee (entitled to civil service job protections).[26]

The New Jersey Supreme Court created the *Pierce* claim in the context of private employment to protect employees without employment contracts "from abusive practices by the employer." *Pierce*, 417 A.2d at 509. Under the same rationale, however, a public employee, who because she has provisional status does not enjoy statutory civil service job protections, should be entitled to bring a *Pierce* claim.

As the City Defendants point out, in considering a tenured Township Treasurer's wrongful discharge claim, the *Geraghty* court *did* note that the *Pierce* cause of action had never been extended to public employees. It was referring, however, not to all public employees but specifically to permanent, tenured public employees who are afforded civil service job protections and hence do not need the *Pierce* cause of action in the same way at will private employees do.[27] *Geraghty*, 613

---

26. See section II(B)(1)(a)(iii) of this Opinion.

27. The full quote from *Geraghty* reads

Plaintiff was an employee protected by statutory tenure who could only be discharged upon notice and hearing. If at trial his termination is found to have been wrongful, what relief would be appropriate? He would be entitled to reinstatement with back pay, that is, restoration of the status quo ante by making him whole, since it would have been determined that he was not validly terminated. Such is the sense of the statutory scheme. Is he nevertheless also entitled to claim damages for wrongful termination? The cause of action for a discharge violative of state law or

public policy first recognized in *Pierce v. Ortho Pharma. Corp.*, 84 N.J. 58, 417 A.2d 505 (1980) has never been extended to a public employee such as plaintiff. It is only recognized within the private employment relationship, where different policy considerations are implicated and there is no separate statutory regulation. Plaintiffs wrongfully discharged from public employment are afforded a complete remedy by obtaining reinstatement with back pay. Such is not always possible or desirable in private employment so that the more traditional tort remedy of damages for the injury sustained is deemed appropriate. This does not mean, however, that the individual defendants may not be held liable for

A.2d at 501. If Farber was a provisional employee without statutory job protections the discussion in *Geraghty* is inapplicable to her. A provisional public employee who could be terminated at any time at the discretion of her employer is precisely the kind of employee for whom the New Jersey Supreme Court recognized the *Pierce* cause of action. *Pierce*, 417 A.2d at 509, 511 ("Under the common law, in the absence of an employment contract, employers or employees have been free to terminate the employment relationship with or without cause ... the common law of New Jersey should limit the right of an employer to fire an employee at will").[28]

Even if Farber is found retroactively to have been a permanent employee under the Civil Service Act, she would still be entitled to bring a wrongful discharge claim. Federal courts applying New Jersey law have without issue considered such claims brought by tenured employees. *See, e.g., Zamboni v. Stamler*, 847 F.2d 73 (3d Cir.1988) (civil service employee of county prosecutor's office brought *Pierce* claim in federal court *after* exhausting administrative remedies provided by civil service law, and federal court granted the claim); *Scully v. Borough of Hawthorne*, 58 F.Supp.2d 435, 461–62 (D.N.J.1999) (court denied *Pierce* claim of police officer who was protected by state police tenure law because the claim lacked merit and *not* because plaintiff was a tenured public employee). *See also Ballinger v. Delaware River Port Auth.*, 172 N.J. 586, 800 A.2d 97 (2002) (court ruled that the DRPA—a bi-state entity—and its employees could be

sued for termination in violation of the clear mandate of public policy).

Finally, the City Defendants argue that Farber's wrongful discharge claim is time-barred because the statute of limitations for such claims is six months. In support of this argument the City Defendants cite N.J. STAT. ANN. § 34:13A–5.4 (c), a provision of New Jersey's labor law. That provision governs "unfair practice" claims against public employers for, *inter alia*, interfering with the formation of a union, N.J. STAT. ANN. § 34:13A–5.4 (a)(2), and refusing to reduce a negotiated agreement to writing, N.J. STAT. ANN. § 34:13A–5.4(a)(6). It does *not* govern common law claims against public employers for wrongful discharge in violation of public policy. Its stringent six-month statute of limitations thus does not apply.

For these reasons, the court will deny the City Defendants' motion to dismiss Farber's wrongful discharge claim.

### D. *The duty of fair representation claim*

After she was fired, Farber asked her union to process a grievance. The grievance presumably would have alleged that the discharge violated the terms of the CBA that governed Farber's employment. *See* N.J. STAT. ANN. § 34:13A–5.3 ("Grievance ... procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement").

---

punitive damages should they be found to have acted in bad faith in terminating plaintiff's employment.
613 A.2d at 501 (citations omitted).

**28.** The argument could be raised that Farber is not vulnerable as an at-will private employee because she may have the protections of a collective bargaining agreement (see section II(D) of this Opinion). Farber is entitled to bring a *Pierce* claim even if she does enjoy the protections of such an agreement, however, because, as explained *infra*, even *permanent* public employees with full civil service protections are ultimately entitled to bring *Pierce* claims.

Farber argues that when the union refused to pursue her grievance and "abandon[ed] all efforts to support her," Complaint ¶ 45, it breached the duty of fair representation (sometimes "DFR") that it owes the employees it represents pursuant to the New Jersey constitution and the New Jersey Employer–Employee Relations Act ("EERA"). The court will deny the union's motion to dismiss. It finds that (1) Farber may bring a claim against the union for breach of the DFR in this court, (2) the claim is not time-barred, and (3) the union was not as a matter of law prevented from processing Farber's grievance.

### 1. Farber may and does bring a cognizable claim against her union for breach of the DFR in court

### a. The DFR under New Jersey law

The New Jersey constitution guarantees the right of public employees "to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing." N.J. Const. Art.1, ¶ 19. The EERA reiterates public employees' right to union representation, which includes employees' right to have their grievances presented to their employer through their majority representative. N.J. STAT. ANN. § 34:13A–5.3; *Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ.*, 78 N.J. 122, 393 A.2d 267, 273–74 (1978).

Because the union's power to represent public employees is exclusive, N.J. STAT. ANN. § 34:13A–5.3, the union has a corresponding duty to represent those employees fairly. *D'Arrigo v. New Jersey State Bd. of Mediation,* 119 N.J. 74, 574 A.2d 44, 47 (1990); *Lullo v. Int'l Ass'n of Fire*

*Fighters, Local 1066,* 55 N.J. 409, 262 A.2d 681, 692 (1970). Unlike its federal counterpart statute—the National Labor Relations Act ("NLRA")[29]—the EERA explicitly defines this duty. *Id.,* 262 A.2d at 692. Section 34:13A–5.3 provides that a "majority representative of public employees in an appropriate unit shall be ... responsible for representing the interest of all such employees without discrimination and without regard to employee organization membership."

The union's duty of fair representation includes the obligation to process employee grievances in good faith. *See* § 34:13A–5.3 ("the majority representative and designated representatives of the public employer shall meet at reasonable times and negotiate in good faith with respect to grievances and terms and conditions of employment"); *D'Arrigo,* 574 A.2d at 47 (the union's duty to process employee grievances "must always be exercised with complete good faith, with honestly of purpose and without unfair discrimination.").

### b. Administrative remedies for a union's breach of the DFR under New Jersey law

"If a meritorious grievance is not pursued on behalf of an employee," the employee may bring an "unfair practice" charge as defined in N.J. STAT. ANN. § 34:13A–5.4 (b) against the union in the Public Employment Relations Commission ("PERC"). *D'Arrigo,* 574 A.2d at 47. *See* N.J. STAT. ANN. § 34:13A–5.4 (c); N.J. ADMIN. CODE tit. 19 § 14–1.1, *et seq.*

The PERC has "exclusive power" to prevent unions from engaging in unfair practices. § 34:13A–5.4 (c). *See City of Hackensack v. Winner,* 82 N.J. 1, 410 A.2d 1146, 1157 (1980) ("The Legislature obviously believed that the existence or occur-

---

**29.** The NLRA is in many ways analogous to the EERA though it applies only to private sector employees. *See* 29 U.S.C. § 152(2) (1982).

rence of unlawful practices called for the expert handling of a specialized administrative agency such as PERC and that in these matters that agency's jurisdiction was indeed to be preferred even to that of the courts").

Farber has given no indication that she filed an unfair practice charge against Local 3474 with the PERC. It now may be too late for her to do so as the six month period for filing such a charge, *see* § 34:13A–5.4(c), has expired, and it is not clear whether Farber would be entitled to equitable tolling.[30]

#### c. *There is also a cause of action at law under the EERA for a union's breach of the DFR*

 Though § 34:13A–5.4 (c) states that the PERC has "exclusive power" to prevent unfair practices, an employee on whose behalf the union fails to process a grievance might also be able to bring a claim *in court* for breach of the DFR that is enunciated in the EERA. This is what Farber appears to have attempted in her Complaint.

The United States Supreme Court has held that an employee may bring a claim against her union in court for breach of the DFR that is implied in § 9(a) of the NLRA. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Hines v.*

*Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).[31] This is true even though such a breach may constitute an unfair labor practice, which usually could be complained of only before the federal counterpart of the PERC—the National Labor Relations Board ("NLRB"). *Breininger v. Sheet Metal Workers Intern. Ass'n Local Union No. 6*, 493 U.S. 67, 73–75, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989); *Vaca*, 386 U.S. at 176–88, 87 S.Ct. 903.

New Jersey courts, however, have not yet decided whether under the EERA courts have concurrent jurisdiction with the PERC over DFR claims. *See D'Arrigo*, 574 A.2d at 47 (noting that an employee whose representative fails to pursue his meritorious grievance has the basis for filing a charge with the PERC, and—citing *Vaca*—"may also have a cause of action in law"); *Saginario v. Attorney General*, 87 N.J. 480, 435 A.2d 1134, 1146 n. 2 (Clifford, J., concurring in part and dissenting in part) (indicating that New Jersey courts have not yet decided whether state courts have concurrent jurisdiction with the PERC over fair representation claims); *Kaczmarek v. New Jersey Turnpike Auth.*, 77 N.J. 329, 390 A.2d 597, 604 n. 3 ("the nature and extent of the exclusivity of PERC's jurisdiction [over fair representation claims] has not yet been adjudicated");

---

30. Section 34:13A–5.4(c) states that the PERC has the authority to issue a complaint stating the unfair practice charge and scheduling a hearing before it or its agent "provided that no complaint shall issue based upon any unfair practice occurring more than 6 months prior to the filing of the charge unless the person aggrieved thereby was prevented from filing such charge in which event the 6–month period shall be computed from the day he was no longer so prevented." The New Jersey Supreme Court has addressed circumstances under which an employee would be "prevented" from filing an unfair practice charge. *Kaczmarek v. New Jersey Turnpike Auth.*, 77 N.J. 329, 390 A.2d 597 (1978).

31. Usually such a claim is brought as a component of a " § 301/hybrid suit." In such a suit the employee claims, first, that the union violated the duty of fair representation by failing to process her grievance, and, second, that the grievance was meritorious because her employer violated the underlying collective bargaining agreement. *See, e.g., DelCostello v. Int'l Bhd. of Teamsters, et al.*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The suit arises under § 301 of the Labor Management Relations Act, although the source of the DFR is the NLRA.

*Kaczmarek,* 390 A.2d at 606 (Pashman, J., concurring) ("We have intimated no view with respect to the question of the exclusivity *vel non* of PERC's jurisdiction over unfair representation claims, as resolution of that issue is unnecessary to the disposition of this appeal. Hence, we need not consider whether the Supreme Court's rationale in *Vaca* would be the proper approach to the exclusivity question in public employment labor relations in New Jersey ... resolution of this important question must await an appropriate future case").

Where the New Jersey Supreme Court has not squarely addressed an issue, this court must be governed by a prediction of how that court would decide were it confronted with the problem. *McKenna v. Ortho Pharma. Corp.,* 622 F.2d 657, 661–62 (3d Cir.1980). The court predicts that if presented directly with the question, the New Jersey Supreme Court would recognize a cause of action at law under the EERA for a union's breach of its DFR. It makes this prediction for three reasons.

First, the New Jersey Supreme Court has often looked to federal court interpretations of the NLRA in interpreting its own labor statutes, both in relation to the DFR and in relation to other issues. *See, e.g., D'Arrigo,* 574 A.2d at 47 (stating that "[a]s is done in counterpart federal labor relations ... we impose on the majority representative the obligation of fair representation"); *City of Hackensack,* 410 A.2d at 1155 (noting that the denial of a promotion due to an employee's union activities would violate the EERA because it has been held to violate the NLRA); *Lullo,* 262 A.2d at 688–89 (assuming that the New Jersey legislature modeled the EERA on the NLRA); *Belen v. Woodbridge Township Bd. of Educ.,* 142 N.J.Super. 486, 362 A.2d 47, 49–50 (1976) (noting that the DFR "has received extensive de-

velopment in the experience and adjudications under the [NLRA], which we find to be an appropriate guide for the interpretation of our own enactment").

Moreover, members of the New Jersey Supreme Court have on two occasions indicated that they did not think the state legislature intended to make the PERC's jurisdiction over DFR claims exclusive. They cited the absence of "unfair representation" in § 34:13A–5.4 (b)'s list of unfair practices in which a union can engage (and for which employees can look to the PERC exclusively for redress) as possible evidence of this legislative intent. *Kaczmarek,* 390 A.2d at 604 (Handler, J.) and 606 (Pashman, J., concurring).

Finally, on at least one occasion, a plaintiff sued its union for breach of the DFR and a New Jersey lower court failed to raise any question about its authority to exercise jurisdiction over the claim. *Belen, supra* (dismissing the DFR claim on the merits).

#### d. *Farber states a claim for breach of the DFR*

 Farber has stated a claim for breach of the DFR. The union's duty to process grievances must be performed "with complete good faith, with honesty of purpose and without unfair discrimination against a dissident employee or group of employees." *D'Arrigo,* 574 A.2d at 47.

Farber has alleged that she was wrongfully terminated and had a legitimate grievance, but that Local 3474 nevertheless refused to process her grievance to arbitration. She will prevail on her claim if she can show that the union acted in bad faith, dishonestly, or discriminatorily in refusing to process that grievance. She will not prevail if she can show only that the union acted negligently in failing to process her grievance,[32] or that the union

---

32. The PERC has more specifically described the appropriate standards for reviewing a un-

ion's conduct in investigating, presenting and processing grievances in this way:

made a good faith decision not to process her grievance after investigating her claim and deciding that it lacked merit.[33]

## 2. *Farber's claim is not time-barred*

■■ Local 3474 asserts that Farber's DFR claim is time-barred. Before the court can evaluate this assertion, it must determine what statute of limitations applies to the claim.

The EERA does not contain or expressly incorporate a statute of limitations for DFR claims brought in court. The court concludes that the New Jersey general statute of limitations thus must apply. That statute, N.J. STAT. ANN. § 2A:14–1, states that "[e]very action at law ... for any tortious injury to the rights of another not stated in sections 2A:14–2 and 2A:14–3 of this Title ... shall be commenced within 6 years next after the cause of any such action shall have accrued."

Section 2A:14–2 supplies the limitations period for actions "for an injury to the person" and § 2A:14–3 supplies the limita-

tions period for actions "for libel or slander." Neither applies to Farber's action which seeks compensation for the injury to her right to fair representation. Complaint ¶ 46. Because that injury is "not stated in sections 2A:14–2 and 2A:14–3," the limitations period supplied by § 2A:14–1 applies.[34]

Farber thus had six years from the date of her termination to file this action against the union for breach of the DFR. Because she did so well within that period, her claim is not time-barred.

The union argues that a six *month* statute of limitations should apply to DFR claims brought in court because that is the limitations period EERA § 34:13A–5.4(c) gives employees to file unfair practice charges with the PERC. This argument is sound, the union urges, because it parallels the United States Supreme Court's reasoning in *DelCostello v. Int'l Bhd. of Teamsters, et al.*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In that case, the Court held that because under the

A breach of the statutory duty of fair representation occurs only when a union's conduct towards a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. A union should attempt to exercise reasonable care and diligence in investigating, processing and presenting grievances; it should exercise good faith in determining the merits of the grievance; and it must treat individuals equally by granting equal access to the grievance procedure and arbitration for similar grievances of equal merit. All the circumstances of a particular case, however, must be considered before a determination can be made concerning whether a majority representative has acted in bad faith, discriminatorily, or arbitrarily ... where a majority representative exercises its discretion in good faith, *proof of mere negligence, standing alone, does not suffice to prove a breach of the duty of fair representation.*
22 NJPER P 27001, Oct. 25, 1995 (citations omitted) (emphasis added).

33. It is well-established that a union is not required to process a grievance through arbi-

tration, *Hines*, 424 U.S. at 567, 96 S.Ct. 1048; *Vaca*, 386 U.S. at 192, 87 S.Ct. 903, but need only press a grievance as far as its merits warrant. *Humphrey v. Moore*, 375 U.S. 335, 349, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964) ("a union must be free to sift out wholly frivolous grievances").

34. *See Montells v. Haynes*, 133 N.J. 282, 627 A.2d 654, 659 (1993) (noting that the legislature intended "tortious injury to the rights of another" to apply primarily to actions for economic loss, as opposed to personal injuries for physical or emotional harm, and that, *inter alia*, actions for legal malpractice fall within this category and are subject to the six-year limitation period of N.J. STAT. ANN. § 2A:14–1). An employee's claim against a union for breach of its DFR is analogous to a claim for breach of a fiduciary duty or for legal malpractice. *See DelCostello*, 462 U.S. at 167, 103 S.Ct. 2281; *Gomez v. Gov't of the Virgin Islands*, 882 F.2d 733, 738 (3d Cir. 1989).

NLRA employees have six months to bring unfair labor practices charges in the NLRB, plaintiffs should have the same amount of time to bring hybrid § 301/DFR claims [35] in court. *Id.* at 172.

The parallel Local 3474 asserts is inexact. The *DelCostello* court only adopted the NLRA statute of limitations because, as no limitations period expressly applied to § 301 actions and there is no general federal statute of limitations, the Supreme Court *had* to "borrow" a limitations period from another source. *Id.* at 158–59, 103 S.Ct. 2281. Here, while no limitations period applies specifically to the cause of action at law under the EERA for breach of the DFR, the New Jersey legislature *has* provided a general state statute of limitations. N.J. STAT. ANN. 2A:14–1.

For that reason, the court need not—indeed, *may* not—"borrow" a limitations period from another source, as the *DelCostello* court was forced to do. It must instead apply the limitations period the New Jersey legislature has provided for "*every* action at law ... for any tortious injury to the rights of another" besides injury to the person and defamation. *See Gomez v. Gov't of the Virgin Islands,* 882 F.2d 733, 737 n. 8 (3d Cir.1989) (holding that the Virgin Islands' general statute of limitations applied to a claim for breach of the DFR under PELRA—the Virgin Island's counterpart to the EERA—and differentiating and rejecting the *DelCostello* approach in the same way the court does here).[36]

### 3. *Farber's was not a non-grievable complaint*

■ The union argues that it owed no duty to process a grievance about Farber's termination—in fact, that it *could not* process such a grievance—because the termination could only be appealed through the procedures established by the Civil Service Act. It cites § 34:13A–5.3, which states

> Public employers shall negotiate written policies setting forth grievance and disciplinary review procedures. ... The procedures agreed to by the parties may not replace or be inconsistent with any alternate statutory appeal procedure nor may they provide for binding arbitration of disputes involving the discipline of employees with statutory protection under tenure or civil service laws.

As the union itself acknowledges in another part of its brief, however, Farber was a provisional employee and thus was not entitled to protection under tenure or civil service laws. *See, e.g., Matter of Wiggins,* 242 N.J.Super. 342, 576 A.2d 932 (1990).[37] The union was thus not as a matter of law prevented from grieving Farber's termination. *See, e.g., In the Matter of Monroe Township, Petitioner, and Local 1360, United Food and Commercial Workers Union, Respondent,* 19 NJPER P 24253, Sept. 24, 1993 ("Civil Service laws do not afford provisional employees an alternate statutory appeal procedure to contest their disciplinary discharges. We have therefore declined to

---

35. *See supra* note 31.

36. Contrary to the union's assertion, *Hrabinski v. Exxon Chem. Co.,* 258 N.J.Super. 143, 609 A.2d 120 (1992) does not conflict with this conclusion. In that case the court did indeed apply a six month limitations period to a claim for breach of the DFR, but the claim arose under federal law, not the EERA.

37. Because the Civil Service Act did not preempt negotiations on the issue of job protec-

tions for provisional public employees, the CBA might have contained protections for Farber. *See, e.g., State, Office of Employee Relations v. Communications Workers of America,* 154 N.J. 98, 711 A.2d 300, 301 (quoting a collective negotiations agreement that outlined disciplinary appeal procedure rights for certain unclassified and provisional public employees).

restrain binding arbitration of grievances contesting the discharges of provisional employees.").

For these reasons, the court will deny the union's motion to dismiss Farber's claim against them for breach of the DFR.

### E. *The § 1985(3) claim*

■ Farber alleges that the City Defendants and the union conspired to deprive her of equal protection of the laws in violation of 42 U.S.C. § 1985(3). Specifically, she claims that the City Defendants and the union met and conspired to deprive her of her First Amendment rights because of her political affiliation, and that overt acts were taken in furtherance of this plan, i.e., the City Defendants terminated her and the union refused to assist her in protesting the termination.

Both the City Defendants and Local 3474 have moved to dismiss this claim. Because it finds that Farber successfully states a claim for violation of § 1985(3), the court will deny the defendants' motion to dismiss.

Section 1985 (3) provides

If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is ... deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive,

directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir.1997). Farber sufficiently alleges each of these elements.

First, Farber's Complaint successfully alleges a conspiracy. In it, Farber asserts that "Defendants did intentionally enter into a wrongful conspiracy," and more specifically that the City Defendants and the union "did meet and conspire to deprive" her of her First Amendment rights. Complaint ¶ 35.

Defendants argue that these assertions regarding formation of the conspiracy lack sufficient particularity. This argument must fail. For practical reasons, no requirement exists that a plaintiff describe the formation of an alleged conspiracy in detail in the Complaint. "The very nature of a conspiracy obscures most, if not all, information about the alleged conspirators' agreement ... in a section 1985(3) action, the complaint must simply plead sufficient facts from which a conspiracy can be inferred; the facts detailing the conspiratorial agreement can be pleaded generally." *Quinones v. Szorc,* 771 F.2d 289, 291 (7th Cir.1985). From the union's alleged failure to assist Farber after she was terminated, and the alleged political connections between Mayor Torres and Ojeda, it reasonably could be inferred that the union was earlier involved in the City's decision to terminate her. Farber's Complaint thus meets the standard articulated in *Quinones.*

The union claims also that Farber has failed to successfully aver its involvement in the conspiracy because the only union involvement she has alleged occurred *after* her termination. This is a misreading of

the Complaint. Farber did allege in her Complaint that the union acted in furtherance of the conspiracy by "ratifying the illegal termination and ... failing to redress the wrongs caused by plaintiff's illegal termination." Complaint ¶ 35. Farber nowhere stated, however, that this post-termination conduct was the union's *only* involvement in the alleged conspiracy. On the contrary, the Complaint states only that all defendants "did meet and conspire to deprive" her of her rights, and Farber's Opposition Brief explains that the union may have been involved in the initial decision to terminate her. If after discovery she can prove this involvement in the initial decision, her claim could succeed.[38]

Next, Farber successfully alleges that the conspiracy was motivated by a class-based discriminatory animus designed to deprive her of equal protection of the laws. Her Complaint asserts that Defendants deprived her of her constitutional rights to freedom of association and speech due to the fact that she was a Republican supporter of former Mayor Barnes.

Defendants argue that people who share a political affiliation are not a cognizable class for § 1985(3) purposes. Neither the United States Supreme Court nor the Court of Appeals has ruled on this question. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (holding that "women seeking an abortion" is not a cognizable class for § 1985(3) purposes, but declining to define the "precise meaning of 'class'" in the § 1985(3) context); *United Bhd. of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 837–38, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (holding that § 1985(3) does not reach conspiracies motivated by economic or commercial animus, but declining to further define the kinds of class-based animus the statute *does* reach); *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (holding generally that "there must be some racial, *or perhaps otherwise class-based*, invidiously discriminatory animus behind the conspirators' action" to implicate § 1985(3)); *Stephens v. Kerrigan*, 122 F.3d 171, 184 (3d Cir.1997) (declining to resolve the question of whether § 1985(3) authorizes relief for discrimination based on political association, or indeed any factor other than race).[39] However, in a case factually similar to this one, and after thoroughly canvassing other federal courts' rulings on this question, a *trial* court in this district interpreted § 1985(3) to protect politically-

---

**38.** If, however, discovery reveals that the union's only involvement in this incident did occur *after* Farber was fired, her claim must fail. This is because, notwithstanding Farber's odd contention that the deprivation of her First Amendment rights "did not end at the time of termination," Complaint ¶ 35, the union could not logically have conspired to violate her rights if it did not become involved until after her rights were violated.

**39.** *See also Robison v. Canterbury Village, Inc.*, 848 F.2d 424, 431 n. 7 (3d Cir.1988), in which the Court of Appeals noted

Although this court has reserved comment on whether " § 1985(3) embraces private conspiracies to discriminate on the basis of factors other than race," *Rogin v. Bensalem Township*, 616 F.2d 680, 697 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981), we previously held that a person who was not a member of a racial minority but who criticized his employer for its allegedly racially discriminatory practices had stated a cause of action under section 1985(3), *Richardson v. Miller*, 446 F.2d 1247 (3d Cir.1971). *See also Hobson v. Wilson*, 737 F.2d 1 (D.C.Cir.1984) (anti-war and civil rights political organizations), cert. denied, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); *Keating v. Carey*, 706 F.2d 377 (2d Cir.1983) (Republicans); *Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir.) (political protestors), cert. denied, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975).

based classes. *Perez v. Cucci*, 725 F.Supp. 209, 249–53 (D.N.J.1989) (Ackerman, J.), aff'd, 898 F.2d 139 (1990). The court follows the *Perez* court's holding and finds that Farber plead sufficient class-based animus when she alleged that Defendants conspired against her because she is a Republican.

Next, Farber successfully alleges acts in furtherance of the alleged conspiracy. As noted, she cites the union's "ratification" of her illegal termination as an "act in furtherance," and clearly the termination itself constitutes such an act.

Finally, Farber successfully alleges that she suffered a deprivation of her rights as a result of the alleged conspiracy. If the other party with whom the union had allegedly conspired was, like the union, a private party, Farber would not have alleged a deprivation of her rights. This is because "in the context of actions brought against private conspirators, the Supreme Court has thus far recognized only two rights protected under § 1985(3): the right to be free from involuntary servitude and the right to interstate travel." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 805 (3d Cir.2001). A claim is stated for conspiracy to violate First Amendment rights, however, if "it is [alleged] that the state is involved in the conspiracy," *Scott*, 463 U.S. at 830, 103 S.Ct. 3352, as it is here because the union's purported co-conspirators were the City Defendants.

The court will thus deny Defendants' motions to dismiss her § 1985(3) claim.

### III. *CONCLUSION*

For the reasons stated above, the court (1) grants the City Defendants' motion to dismiss Farber's claims under the federal and state constitutions that the City Defendants deprived her of her property interest in her job without due process, and (2) denies the City Defendants' and the union's motions to dismiss in all other respects.